```
                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF VERMONT
                                      :
UNITED STATES OF AMERICA              :
                                      :
     v.                               :    No. 2:05-cr-25
                                      :
CASSIUS LAMAR SHINE,                  :
     Defendant.                       :
                                      :
```

## MEMORANDUM AND ORDER

The Defendant, Cassius Lamar Shine, is charged with conspiracy to manufacture, possess with intent to distribute, and distribute in excess of 50 grams of a mixture or substance containing a detectable amount of cocaine base, that is, crack cocaine.  On September 14, 2006, he filed a Motion to Suppress evidence found when a search warrant was executed at a residence where he was present on October 29, 2004.  The Court held a hearing on the Motion on December 7, 2006, and admitted evidence including the testimony of Detective David Lachance, who directed the investigation into Shine and his co-defendant James Rutherford, and photographs of the apartment taken during the execution of the search warrant.

For the reasons stated below, the Motion to Suppress (Doc. 71) is DENIED.

## I.  FACTS

The Court finds as follows:

Detective David Lachance, the investigator in charge of this

case, has extensive experience in drug investigations and has received training through state, local, and military organizations on drug investigations. He has participated in the execution of roughly 100 search warrants. In early October of 2004, a confidential informant approached the Rutland, Vermont police. This individual was an informant with whom Detective Lachance had previously worked and whose information had proved reliable in the past. The individual informed Detective Lachance that crack cocaine was being dealt from 140 Grove Street in Rutland. Later that same month, a second confidential informant ("CI-2")informed Detective Lachance that crack cocaine was dealt at that address by "James." Detective Lachance was aware from other investigations that James Rutherford resided at that address. CI-2 had previously provided information which proved reliable, and had participated in controlled purchases in the past, leading to arrests.

 Detective Lachance used CI-2 to make a controlled purchase at 140 Grove Street. Detective Lachance and another officer conducted surveillance of the address while CI-2 entered and purchased crack cocaine. CI-2 reported that he met with "James," who sold him crack cocaine. He reported that a second individual was present but was unable to give that person's name. The officers continued surveillance of the address and observed traffic in and out of the residence which they identified as

consistent with narcotics distribution.

Detective Lachance applied for a warrant to search 140 Grove Street. In his affidavit in support of his application, Detective Lachance detailed his training and experience, and discussed characteristics which he had learned through training and experience that drug dealers were likely to possess in explaining the types of evidence of drug trafficking that he believed that law enforcement would find in the apartment. The warrant was issued on October 26, 2004, authorizing the search of "140 Grove Street rear downstairs apartment located in Rutland Vermont." It also authorized the search of a black male named James and any other persons found inside the apartment or entering or exiting the apartment. The specific items for which the warrant authorized a search were:

> Any evidence of criminal violations involving the sale and distribution of regulated drugs, that evidence includes cocaine and any other identifiable illegal drug, distribution records, receipts for equipment and material purchases and rentals, telephone records, address books, photographs, handguns, ammunition and other weapons, paraphernalia including scales, cutting material and tools and evidence of financial tractions including: money, negotiable instruments, precious metals and/or stones, books, records, receipts, notes, ledgers, and other papers related to the transportation, ordering, sales and distribution of regulated drugs and address and telephone records suggesting names and/or phone numbers of drug trafficking associates, tax records, film, video tapes, computers and computer records, all of which have been used in and/or constitute evidence of violations of Vermont's Regulated Drug Laws.

After the warrant issued, a third confidential informant

provided Detective Lachance with a phone number for James Rutherford, and told him that a subject known as "Goldie" was distributing crack cocaine from that number.  This third informant stated that Goldie had left the apartment at 140 Grove Street and had gone to get more crack cocaine.  On October 28, 2004, as law enforcement officers continued surveillance on the apartment, they witnessed a van arrive and two individuals, including defendant Cassius Shine, enter the apartment.  At that time Detective Lachance arranged for CI-2 to undertake a second controlled purchase at the apartment.  CI-2 made a purchase and reported that both suspects ("James" and "Goldie") were in the apartment.

At 6:10 on the morning of October 19, 2004, the officers executed the search warrant.  Shine and Rutherford were both in the living room at the time.  Shine identified himself as Bobby Cotton.  Both were handcuffed in order to ensure the safety of law enforcement officers and avoid the destruction of evidence. They were told that they were not under arrest at that time. Shine was patted down, and over $900.00 in cash and a bag containing some pieces of gold jewelry were located on his person.

The officers' search of the apartment revealed cooking pots in the kitchen containing a substance that appeared to be cocaine in the process of being transformed into crack cocaine.  The

substance was field tested and identified as containing cocaine. Also in the kitchen, the officers located a door leading to the basement.  They had been previously unaware of the existence of a basement, as CI-2 had reported that he was not allowed to enter the kitchen. A padlock was attached to the door, but the lock was open.  The officers proceeded through the door and were able to see a table bench with a drop cloth of a type used in painting, with paint stains visible on it.  Detective Lachance was aware that Rutherford was a painter.  The officers proceeded to search the basement.  The basement contained a hatch door leading outside of the building, which was locked from inside the basement and could not be opened from outside.  Otherwise, the basement could be entered only from the apartment's kitchen. Near the bottom of the stairs from the kitchen, the officers found a McDonald's bag containing rocks of crack cocaine.

A 6:47, Shine and Rutherford were informed that they were under arrest and then transported to the police station.  The officers completed their investigation of the apartment and left the residence at about 7:45 a.m.

## II.  DISCUSSION

Shine contends that the search warrant was so overly broad that the officers could not have believed that it was valid, and that its execution "grossly exceeded [its] scope" due to the "search of a basement which was not part of the apartment" and

the "continuing seizure of the Defendant" during the search of the apartment. (Mot. to Suppress 2.)

A warrant violates the Fourth Amendment if it fails to specify the place to be searched and the items to be seized.  The executing officer must be able "to ascertan and identify with reasonable certainty those items that the magistrate has authorized him to seize."  United States v. George, 975 F.2d 72, 75 (2d Cir. 1992) (citing Steele v. United States, 267 U.S. 498, 503 (1925)).

The warrant in this case was supported by probable cause. Detective Lachance submitted an affidavit, based on his extensive experience in drug investigations, which described the usual practices of drug dealers.  The warrant authorized law enforcement to search for, and seize, a series of specified items that in his experience were ordinarily used in or associated with drug distribution.  The magistrate was entitled to credit Detective Lachance's specialized knowledge about the practices of narcotics dealers in determining that probable cause existed. See United States v. Young, 745 F.2d 733, 758 (2d Cir. 1984).

The warrant described the items with sufficient particularity to allow the executing officers to determine which items they could seize.  In Young, the Second Circuit upheld the execution of a warrant authorizing a search for: "Quantities of heroin and other controlled substances, other chemical

substances, equipment, utensils, paraphernalia, containers, money, notes, documents and papers and other evidence of a conspiracy to distribute and of the distribution and possession with intent to distribute of [sic] narcotic drug controlled substances," where the executing officers had seized items such as jewelry, fur coats, and others not listed specifically in the warrant.  Young, 745 F.2d at 759.  The warrant in this case was far more specific, and the executing officers did not seize items others than those listed in the warrant.  The officers provided the most precise description possible under the circumstances of the evidence that they expected to locate.  See id. (citing United States v. Dunloy, 584 F.2d 6, 10-11 (2d Cir.1978)).  Law enforcement officers need not have actual knowledge of the presence of each item listed in a warrant before the warrant can be issued or executed.  Here, the officers had probable cause to believe that the items listed were likely to be present, and those items were listed with sufficient particularity to allow them to identify the items that they could seize.

A warrant adequately describes the location to be searched if the "executing officers can with reasonable effort ascertain and identify the place intended."  Steele, 267 U.S. at 503.  Here, Shine alleges that the basement was beyond the scope of the search that the warrant allowed.  However, the warrant authorized a search of "140 Grove Street rear downstairs apartment located

in Rutland Vermont" and the basement clearly was a part of that apartment.  The basement was accessed through a door located in the apartment's kitchen, which had an unlocked padlock, indicating that the occupants of the apartment had control over basement access. The basement's contents made it clear that the apartment's occupants did actually use the basement; it contained a cloth which was identifiable as belonging to Rutherford. Finally, the door to the basement from outdoors was locked from the inside, so that it could only be accessed through the apartment named in the warrant.  Under these circumstances, the executing officers could reasonably ascertain that the basement was a part of the apartment and, therefore, included in the area to be searched.

Shine's temporary detention during the execution of the warrant does not negate the warrant's validity.  "[A] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted."  Michigan v. Summers, 452 U.S. 692, 705 (1981).  Legitimate law enforcement interests in preventing flight, preventing the destruction or concealment of evidence, and most importantly, minimizing the risk of harm to the officers, justify this conclusion.  See id. at 702.  "[T]he execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or

frantic efforts to conceal or destroy evidence." <u>Id.</u>  Shine and Rutherford were detained in the apartment for only slightly over half an hour, and were then arrested and transported to the police station.  This detention and the subsequent arrest did not violate the Fourth Amendment, and no suppression of evidence is warranted.

### III.  CONCLUSION

For the foregoing reasons, the Defendant's Motion to Suppress is DENIED.


Dated at Burlington, Vermont this 15th day of December, 2006.


/s/ William K. Sessions III
William K. Sessions III
Chief Judge
