```
                  UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF VERMONT

                                   :
UNITED STATES OF AMERICA           :
                                   :
     v.                            :     No. 2:05-cr-25
                                   :
CASSIUS LAMAR SHINE,               :
     Defendant.                    :
                                   :
```

## MEMORANDUM AND ORDER

The Defendant, Cassius Lamar Shine, is charged with conspiracy to manufacture, possess with intent to distribute, and distribute in excess of 50 grams of a mixture or substance containing a detectable amount of cocaine base, that is, crack cocaine, and with possession with intent to distribute more than 50 grams of cocaine base within 1,000 feet of a public school. On September 14, 2006, Shine filed a Motion to Disclose Informant seeking the identity of an informant known as "CI-2" whose cooperation with law enforcement aided the police to obtain a search warrant, leading to Shine's arrest.  The Court held a hearing on this and other pending motions on December 7, 2006. For the following reasons, the Motion (Doc. 73) is DENIED.

### I.  FACTS

In early October of 2004, a confidential informant ("CI-1") approached the Rutland, Vermont police.  The individual informed

Detective David Lachance, who headed the investigation into Shine, that crack cocaine was dealt at 140 Grove Street in Rutland.  Later that same month, a second confidential informant ("CI-2")informed Detective Lachance that crack cocaine was dealt at that address by "James" and a second individual, whose name was unknown.  CI-2 described the second individual as a dark skinned black male, about 30 years old, stocky in build and about 6 feet tall.  Shine is 40 years old, and 5'9" tall.  Detective Lachance was aware from other investigations that James Rutherford resided at the address given.  CI-2 had previously provided information which proved reliable, and had participated in controlled purchases in the past, leading to arrests.

 Detective Lachance used CI-2 to make a controlled purchase at 140 Grove Street.  Detective Lachance and another officer conducted surveillance of the address while CI-2 entered.  CI-2 reported that he met with James, who sold him crack cocaine.  He reported that the second individual that he had previously described was present as well, and that he was introduced to this man by his street name, but could not remember what that name was.  The officers continued surveillance of the address and observed traffic in and out of the residence which they identified as consistent with narcotics distribution.

 Based on this information, Detective Lachance applied for a warrant to search 140 Grove Street.  The warrant was issued on

October 26, 2004, authorizing the search of the apartment, of a black male named James, and of any other persons found inside the apartment or entering or exiting the apartment. After the warrant was issued, CI-2 spoke with James and the other subject, and was informed that the other subject's name was "Goldie." He provided a further description of Goldie, noting that he had gold teeth and wore a lot of jewelry.

After the warrant issued, a third confidential informant ("CI-3") provided Detective Lachance with a phone number for James Rutherford, and told him that a subject known as "Goldie" was distributing crack cocaine from that number. He described Goldie as having gold teeth, and estimated his age at around 40. This third informant stated that Goldie had left the apartment at 140 Grove Street and had gone to get more crack cocaine.

On October 28, 2004, as law enforcement officers continued surveillance on the apartment, they witnessed a van arrive and two individuals, Shine and Brian Wilder, enter the apartment. At that time Detective Lachance arranged for CI-2 to undertake a second controlled purchase. CI-2 made a purchase and reported that both suspects, James and Goldie, were in the apartment. He confirmed that Goldie was the same man he had met at the apartment previously. Around 12:01 a.m. on October 29, 2004, the officers saw William Porter enter the apartment, then exit it 30 minutes later.

The officers executed the warrant early on the morning of October 29, 2004.  James Rutherford and Cassius Shine were present in the apartment.  They were patted down at the beginning of the search, and officers located a bag containing gold jewelry on Shine, who had gold teeth consistent with the description of Goldie.  Officers located crack cocaine during the search of the apartment and arrested Rutherford and Shine.

Rutherford provided a statement after he was arrested, and has since entered into a cooperation plea agreement with the government.  He is expected to testify at Shine's trial. Rutherford indicated that he and "Goldie" had sold crack cocaine together for about one week.  Rutherford dealt with the customers directly, selling them crack cocaine he received from "Goldie" and receiving crack cocaine as his compensation. Detective Lachance also interviewed William Porter on October 29, 2004, and he provided a statement admitting buying crack cocaine from Rutherford and Rutherford's supplier.  Brian Wilder, the driver of the white van, also provided a statement.

On February 16, 2006, a federal grand jury returned a two-count Indictment against Shine and Rutherford, charging them with conspiracy to manufacture, to possess with intent to distribute, and to distribute more than 50 grams of cocaine base, and with possession with intent to distribute more than 50 grams of cocaine base within 1,000 feet of a public school.

## II. DISCUSSION

Ordinarily the government may withhold from disclosure the identity of persons who furnish information regarding violations of the law to officers charged with enforcement of that law. Roviaro v. United States, 353 U.S. 53, 59 (1957). However, disclosure of an informer's identity may be required where it is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." Id. at 60-61. "The defendant bears the burden of showing the need for disclosure of an informant's identity, and to do so must establish that, absent such disclosure, he will be deprived of his right to a fair trial." United States v. Fields, 113 F.3d 313, 324 (1997) (internal citations omitted).

The defendant must do more than speculate that disclosure of the informant's identity will be of assistance; rather, he must show that his need for disclosure outweighs the government's interest in shielding the informant's identity. Id. (citing Roviaro, 353 U.S. at 62). The government has a strong interest in nondisclosure, as "the purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." Roviaro,

353 U.S. at 59.

A right to disclosure is often found "where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence." United States v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988) (quoting United States v. Russotti, 746 F.2d 945, 950 (2d Cir. 1984); United States v. Roberts, 388 F.2d 646, 648-49 (2d Cir. 1968)). However, a mere showing "that the informant was a participant in and witness to the crime charged" is insufficient. Id. (citing United States v. Jimenez, 789 F.2d 167 (2d Cir. 1986)).

Here, CI-2's testimony is unlikely to be significant in determining Shine's guilt or innocence in light of the other evidence available. The government expects to have available as witnesses Rutherford, Wilder and Porter, all of whom had direct dealings with Shine and are expected to testify. The Indictment does not charge the controlled purchase to CI-2 among its counts, and there are many witnesses other than CI-2 to the offenses that are charged. Cf. Roviaro, 353 U.S. at 64 (requiring disclosure where the informant was the "sole participant, other than the accused, in the transaction charged").

Shine argues that because the initial description of Goldie that CI-2 provided does not perfectly match Shine, who is 40 rather than 30 years old and is shorter than 6 feet in height,

6

CI-2's testimony could be exculpatory. He suggests that he is entitled to disclosure under Brady v. Maryland, 373 U.S. 83, 87 (1963), which holds that the prosecution's suppression of material evidence favorable to the accused violates due process.

Disclosure of CI-2's identity is not merited on the grounds that it is "relevant and helpful to the accused" under Roviaro, or as Brady material. CI-2's testimony is not likely to be exculpatory. In light of the facts, it is far more likely to be inculpatory. CI-2 stated that he met the *same* individual on each occasion, and was not describing two different individuals as Rutherford's co-conspirator. Descriptions that he provided of "Goldie" following his controlled purchases were of Shine, who did in fact have gold teeth and had jewelry in his possession when searched. Those portions of his description of "Goldie" are consistent with the descriptions provided by other informants as well. CI-2's initial misjudgements of Shine's age and height were so small as to be meaningless in this context.

Shine has done no more than speculate that CI-2's testimony could aid him, without demonstrating how that testimony would be either exculpatory or more than minimally material to his case. Under these circumstances, he has not established that non-disclosure of CI-2's identity will deprive him of a fair trial.

### III.   CONCLUSION

For the foregoing reasons, the Defendant's Motion to

Disclose Informant is DENIED.

Dated at Burlington, Vermont this 5th day of January, 2007.

>                                    /s/ William K. Sessions III
>                                    William K. Sessions III
>                                    Chief Judge